**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| MALIBU MEDIA, LLC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-2406 |
| | § | |
| JONATHAN GONZALES, | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION & ORDER

Pending before the court is plaintiff Malibu Media, LLC's (d/b/a "X-Art.com") ("Malibu Media") amended motion for default judgment. Dkt. 21. Having considered the amended complaint, motion, record evidence, and applicable law, the court is of the opinion that the motion should be GRANTED IN PART AND DENIED IN PART.

### I. BACKGROUND

This case arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et. seq. (the "Copyright Act"). Dkt. 10 at 1. Malibu Media brings this copyright infringement action against defendant Jonathan Gonzales. Malibu Media alleges that it owns copyrights to eighteen adult films (the "Copyrighted Works") and that Gonzales used computer software known as BitTorrent to illegally download, copy, and distribute the films. Dkt. 10 at 4.

Malibu Media is a California corporation engaged in the production and distribution of adult erotic films through its website "X-Art.com." *See* Dkt. 6-2 (Pelissier Dec.). Customers pay monthly or annual subscription fees to access an online library of copyrighted video content. *Id*. at 3. Internet subscription sales are Malibu Media's primary source of revenue. *Id.* However, Malibu Media

claims its content is well-known and ranks as the most downloaded adult content on several popular BitTorrent websites. *Id.* According to Malibu Media, it must "protect its copyrights in order to survive and . . . hope for future revenue growth." *Id.* at 4.

A.   **BitTorrent**

Malibu Media alleges that the copyright infringement occurred through the use of BitTorrent. Malibu Media alleges that BitTorrent is one of the most common computer programs that allows people to share files over the Internet. Dkt. 10 at 2–3. BitTorrent, a peer-to-peer file sharing system, is primarily used for distributing large amounts of data, including digital movie files. *Id.* at 3. Malibu Media claims that BitTorrent's defining feature is that it allows files to be transferred among multiple computers simultaneously without creating a heavy load on any individual source computer. *Id.*

Malibu Media explains that in order to distribute a large file, the BitTorrent protocol breaks a file into smaller pieces and assigns each piece a "hash," a unique alphanumeric identifier, similar to an electronic fingerprint. *Id.* Every digital file has one hash value correlating to it. *Id.* The BitTorrent protocol uses the hash values to ensure each piece is properly routed among BitTorrent users as they engage in file sharing. *Id.* The entire digital media file also has a hash value that acts as a digital fingerprint to identify the media file or movie. *Id.* When a software user completes downloading all the pieces of a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate. *Id.* Once a BitTorrent file has been created, other BitTorrent users may access and download the file. Id.

B.   **Alleged Copyright Infringement**

Malibu Media hired investigators, IPP International UG and Excipio GmbH ("IPP"), to

identify individuals who use BitTorrent to illegally download and distribute content. *Id*. IPP uses software to detect the Internet Protocol ("IP") addresses of BitTorrent users that distribute Malibu Media's Copyrighted Works within the BitTorrent File Distribution Network. *See* Dkt. 6-4 at 2 (Fieser Dec.). Infringement of Malibu Media's copyrights can occur through the distribution of a single movie file correlating to a copyrighted Malibu Media movie, or a large scale distribution of "Unauthorized Packs." *Id.* IPP claims it established a direct Transmission Control Protocol/Internet Protocol ("TCP/IP") connection with the assigned IP address of 98.195.133.204, belonging to Gonzales. Dkt. 10 at 3; Dkt. 1-1. IPP claims it downloaded a full copy of each file hash from the BitTorrent File Distribution Network and confirmed that the file hash matched files containing Malibu Media's Copyrighted Works. Dkt. 10 at 4. IPP claims its investigation revealed that Gonzales had used BitTorrent to download, copy, and distribute the Copyrighted Works without authorization. Dkt. 10 at 4.

C.    **Procedural History**

On August 9, 2016, Malibu Media filed a complaint against an unnamed individual who allegedly used BitTorrent to copy and distribute the Copyrighted Works without Malibu Media's consent, thereby infringing its copyright. Dkt. 1. The original complaint alleged that the defendant John Doe, a subscriber with an IP address of 98.195.133.204, infringed on Malibu Media's registered copyrights using BitTorrent. Dkt. 1. After filing the complaint, Malibu Media moved for leave to serve a third-party subpeona on John Doe's Internet Service Provider, commanding it to provide the subscriber's name and contact information. Dkt. 8. The court granted the motion, after which Malibu Media filed an amended complaint naming Gonzales as the infringer. Dkt. 10. Malibu Media then moved for entry of default judgment (Dkt. 17), but the court granted an order striking

the motion for failing to comply with filing requirements. Dkt. 20. The original motion for default judgment failed to serve Gonzales by certified mail with a return receipt. *Id.* On January 24, 2017, Malibu Media properly served Gonzales with certified mail and a return receipt. Dkt. 21-1. On January 26, 2017, Malibu Media filed an amended motion for default judgment against Gonzales. Dkt. 21. Malibu Media's attorney provides a sworn declaration stating that Gonzales is not a minor, incompetent, or in active military service. Dkt. 19.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Under Rule 55(b)(2), a party may apply for the court to enter a default judgment, and the "court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). Rule 4 of the Federal Rules of Civil Procedure requires the plaintiff to serve a copy of the summons and complaint on the defendant. Fed. R. Civ. P. 4(c)(1). Under Local Rule 5.5, a motion for default judgment must be served upon the defendant via certified mail, return receipt requested. S.D. Tex. L.R. 5.5.

A default judgment is a "drastic remedy, not favored by the Federal Rules[,] and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). "The Federal Rules of Civil Procedure[s] are designed for the

just, speedy, and inexpensive disposition of cases on their merits, not for the termination of litigation by procedural maneuver." *Id.*

Gonzales has failed to plead or otherwise defend against this lawsuit. Malibu Media properly served Gonzales with this lawsuit under the Federal Rules and with the amended motion for default judgment under the Local Rules. Dkt. 11; Dkt. 21; *see* Tex. L.R. 5.5. Given Gonzales' failure to answer the complaint in a timely manner, the court: (1) has the authority to enter default against Gonzales, (2) accept all well-pleaded facts in Malibu Media's complaint as true, and (3) award the relief sought by Malibu Media in this action. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

### III. ANALYSIS

To receive a default judgment, a plaintiff must state a plausible claim for relief. *Id.* Malibu Media argues that Gonzales committed direct copyright infringement. Copyright infringement requires two elements to be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282(1991).

### A.    Ownership of a Valid Copyright

First, Malibu Media alleges that it is the registered owner of the eighteen Copyrighted Works listed in Exhibit B. Dkt. 10-2. Exhibit B provides an overview of the Copyrighted Works, including a hit date, date of first publication, registration date, and registration number issued by the United States Copyright Office. Dkt. 10 at 4; Dkt. 10-2. However, the court observes that Malibu Media lists three of the registration numbers as "pending" Dkt. 10-2.

Section 411 of the Copyright Act governs registration and civil infringement actions of copyrights. 17 U.S.C. § 411 (2012). A copyright claim cannot be instituted until preregistration or registration of the copyright claim has been made. 17 U.S.C. § 411(a) (2012). The Supreme Court has "declined to address whether Section 411(a)'s registration requirement is a mandatory precondition to suit that . . . district courts may or should enforce *sua sponte* by dismissing copyright infringement claims involving unregistered works." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S.Ct. 1237, 1240 (2010). However, in the Fifth Circuit, a copyright infringement claim may be dismissed if a plaintiff does not comply with Section 411(a)'s registration requirement. *Real Estate Innovations, Inc. v. Hous. Ass'n of Realtors, Inc.*, 422 F. App'x 344, 348 (5th Cir. 2011).

A plaintiff does not need a certificate of registration from the Copyright Office before bringing a suit and the Office does not need to consider the application for registration. *Starr v. DaimlerChrysler Corp.*, 252 F. App'x 590, 590 (5th Cir. 2007); *see Positive Black Talk*, 394 F.3d at 365. The Fifth Circuit "requires only that the Copyright Office actually receive the application, deposit, and fee before a plaintiff files an infringement action" to comply with Section 411(a). *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 365 (5th Cir. 2004); *see also Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984) (holding that plaintiff must only "prove payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application" to state a claim for copyright infringement.).

Here, Malibu Media does not allege that it complied with Section 411(a)'s registration requirement, or even the Fifth Circuit's interpretation of the requirement. Malibu Media has not claimed it was in the process of sending an application to the Copyright Office or that it was intending to do so. Instead, Malibu Media merely claimed to be the owner of all eighteen

Copyrighted Works and provided three as "pending" in lieu of providing copyright registration numbers. Dkt. 10-2. The three works, listed as the first, second, and seventh works respectively, all have a registration date asserted in Exhibit B. *Id.* However, Malibu Media has failed to include any factual basis for asserting its copyright ownership for these audiovisual works, such as proof of the required Copyright Office fee, deposit, or receipt by the Copyright Office of a registration application. *See e.g.*, *Apple Barrel Prods.*, 730 F.2d at 386; *see also Breadmore v. Jacobson*, No. 4:13-cv-361, 2014 WL 3543726, at *5–6 (S.D. Tex. July 14, 2014) (Harmon, J.) (holding that the plaintiff's copyright claim failed for lack of compliance with the Fifth Circuit's registration requirement); *Atl. Recording Corp. v. Anderson*, No. H-06-3578, 2008 WL 2316551, at *6 (S.D. Tex. Mar. 12, 2008) (Gilmore, J.) (holding that copies of registration certificates are prima facie evidence of copyright ownership).

Therefore, the court finds that Malibu Media has failed to allege copyright ownership over these three works. However, the court finds that Malibu Media has demonstrated ownership of a valid copyright of the fifteen Copyrighted Works which have a registration number.

B.      **Direct Copyright Infringement**

Second, Malibu Media alleges that Gonzales infringed on its copyrights. The second element of a copyright infringement claim requires proof of unauthorized copying of the original work. *Peel & Co. v. The Rug Market*, 238 F.3d 391, 395 (5th Cir. 2001). "Copyright infringement actions . . . ordinarily require no showing of intent to infringe. Instead, knowledge and intent are relevant in regard to damages." *Chavez v. Arte Publico Press*, 204 F.3d 601, 607 (5th Cir. 2000).

Malibu Media claims that Gonzales used the BitTorrent protocol to illegally "download, reproduce, distribute, perform[,] and display" Malibu Media's copyrighted audiovisual works.

Dkt. 18 at 3. Malibu Media alleges that its investigators established a direct TCP/IP connection with Gonzales' IP address and downloaded one or more pieces of the digital media files identified by the file hashes in Exhibit A. *Id.* Each file hash listed in Exhibit A correlates to a copyrighted film in Exhibit B. *Id.* Each digital media file listed in Exhibit A was allegedly verified to be a copy identical or similar to Malibu Media's corresponding original work. *Id.* Malibu Media claims that Gonzales copied and distributed the original works listed in Exhibit B without Malibu Media's authorization, thereby violating Malibu Media's exclusive copyrights. *Id.*

Downloading and distributing audiovisual works without authorization through peer-to-peer networks such as BitTorrent is a "distribution" prohibited by the Copyright Act. *See Atl. Recording Corp.*, 2008 WL 2316551, at *8 (holding that making copyrighted works available for download through a peer-to-peer network constituted a violation). Using an online file-sharing system contemplates "further distribution" and therefore satisfies the second element of a copyright infringement claim. *Id.* Malibu Media argued that Gonzales' unauthorized use of BitTorrent violated the Copyright Act. Dkt. 18 at 3–4. Furthermore, Gonzales' IP address was documented distributing multiple pieces of a Malibu Media copyrighted movie. *See* Dkt. 6-4 at 3 (Fieser Dec.). Because Malibu Media pled enough facts, when taken as true, to support the allegation of unauthorized copying and distribution of its original work, the court finds that Malibu Media has satisfied the second element of copyright infringement.

## C.     Default Judgment

Although a default judgment is a "drastic remedy, not favored by the Federal Rules[,] and resorted to by courts only in extreme situations," Gonzales failed to respond to Malibu Media's complaint. *Sun Bank of Ocala*, 874 F.2d at 276. The court finds that Malibu Media made a

sufficient showing with respect to the two elements of copyright infringement for fifteen of the Works. The court therefore GRANTS IN PART Malibu Media's motion and enters default judgment against Gonzales for fifteen of the Copyrighted Works and DENIES IN PART Malibu Media's motion for default judgment for the three copyright-pending works.

## IV. DAMAGES

In its complaint, Malibu Media requests that the court issue an injunction against Gonzales, and requests relief in the form of statutory damages, costs, attorney's fees, and pre- and post-judgment interest. Dkt. 10 at 6. The court will address each of these requests for relief in turn.

**A.      Injunctive Relief**

Malibu Media requests the court to enter an injunction against Gonzales as proposed in its complaint. *Id.* Specifically, Malibu Media seeks an order enjoining Gonzales and all other persons who are in active concert or participation with Gonzales from continuing to infringe on Malibu Media's copyrighted works. *Id.* Further, Malibu Media seeks a court order that Gonzales delete and permanently remove all infringing copies of Malibu Media's works on Gonzales' computer. *Id.*

Under section 502(a), a court may grant a permanent injunction on terms it finds reasonable to prevent or restrain copyright infringement. 17 U.S.C. § 502(a). For a permanent injunction, a party must demonstrate: (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest. *See DSC Comms. Corp. v. DGI Tech., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996).

In the present case, Malibu Media has succeeded on the merits against Gonzales. Malibu Media also has no adequate remedy at law because Malibu Media's injury cannot be fully

compensated or measured in a dollar amount because the extent of distribution cannot be measured. *Atl. Recording Corp.*, 2008 WL 2316551, at \*10. Without enjoining Gonzales from further infringing on Malibu Media's copyrighted content, Malibu Media would remain vulnerable to continued infringement. The injunction does not burden Gonzales, as he is merely required to comply with the law, and the public interest is served by upholding Malibu Media's copyright protections.

The court finds that Malibu Media has shown it is entitled to injunctive relief based on Gonzales' alleged violation of federal copyright law. Generally, an injunction must be narrowly tailored to remedy only the specific harms shown by Malibu Media, rather than to enjoin all possible breaches of the law. Fed. R. Civ. P. 65(d); *see Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 587 (5th Cir. 2013). The court has reviewed the injunction Malibu Media proposed and finds that it is not over-broad and merely enjoins Gonzales from engaging in further offending conduct. The court GRANTS Malibu Media's request for an injunction.

**B.  Statutory Damages**

Malibu Media is seeking statutory damages as outlined in 17 U.S.C. § 504. A copyright owner may elect to recover statutory damages for all infringements "with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). A finding of willful infringement may "increase the award of statutory damages to a sum or not more than $150,000." 17 U.S.C. § 504(c)(2).

Malibu Media requests an award of $13,500 in statutory damages ($750 per work). Dkt. 18 at 9. Malibu Media argues that the requested amount is reasonable because Gonzales aided other BitTorrent users by distributing the copyrighted material. *Id.* The actual damages due to lost

subscriptions relates to the thousands of infringers that have access to the copyrighted material. *Id.*

Although Malibu Media discusses willful infringement and possible recovery of $150,000, Malibu Media ultimately only requests statutory damages of $13,500. The court finds that Malibu Media's request of $750 per work is reasonable. However, the court is only granting default on fifteen of the Works. Therefore, the court GRANTS IN PART Malibu Media's request for statutory damages in the amount of $11,250 ($750 per work) for the fifteen Copyrighted Works.

## C.     Attorney's Fees and Costs

In any civil action under this title, the court in its discretion may allow the recovery of full costs and award reasonable attorneys' fees to the prevailing party. 17 U.S.C. § 505 (2012). To collect costs, parties must maintain their own record of taxable costs and an application for costs shall be made by filing a bill of costs within 14 days of the entry of a final judgment. S.D. Tex. L.R. 54.2.

Courts use a two-step process to calculate reasonable attorney's fees. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours spent on the case by the reasonable hourly rates for the participating lawyers. *Id.* Second, the court considers whether the lodestar should be adjusted upward or downward depending on the circumstances of the case, under the twelve *Johnson* factors. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

The movant seeking attorneys' fees bears the initial burden of submitting adequate documentation of the hours expended and the hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933 (1983). Plaintiffs seeking attorneys' fees are charged with the burden of showing the reasonableness of the hours billed, and therefore, are also charged with proving that the attorneys

exercised billing judgment. *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006). Billing judgment requires documentation of the hours charged and the hours written off as unproductive, excessive, or redundant. *Id.*

17 U.S.C. § 505 allows the court to award costs and reasonable attorneys fees to the prevailing party, Malibu Media. Malibu Media has submitted adequate documentation of the hours its attorney and attorney support staff have spent pursuing this claim. Dkt. 19. The invoice lists Malibu Media's attorney as spending 1.9 hours on this claim at a rate of $300.00 per hour. *Id.* Additionally, the invoice indicates that a paralegal working on behalf of Malibu Media has spent 7.2 hours on this claim at a rate of $85.00 per hour. *Id.* The total amount of attorney's fees that Malibu Media requests is $1,182.00. *Id.* The court finds this request to be reasonable and GRANTS Malibu Media attorney's fees in the amount of $1,182.00. Additionally, the court GRANTS Malibu Media costs of court in accordance with S.D. Tex. L.R. 54.2.

**D.    Interest on the Judgment**

Interest is allowed on any money judgment in a civil case recovered in a district court. 28 U.S.C. § 1961 (2000). Malibu Media is entitled to post-judgment interest, but the Copyright Act does not specifically authorize an award of pre-judgment interest. *Granville v. Suckafree Records, Inc.*, No. H-03-3002, 2006 WL 2520909, at *5 (S.D. Tex. June 28, 2006) (Werlein, J.). The Fifth Circuit has not addressed the issue, but precedent of this court is that pre-judgment interest is not available on an award comprised entirely of statutory damages under 17 U.S.C. § 504(c). *Granville*, 2006 WL 2520909 at *6; *see also Blackmer v. Monarch Holdings (USA), Inc.*, No. H-00-4290, 2002 WL 32361935, at *5 (S.D. Tex. July 11, 2002) (Hittner, J.) (concluding that a plaintiff could not recover pre-judgment interest on his recovery of statutory damages under the Copyright Act).

12

Malibu Media is entitled to recover damages against Gonzales as detailed above, plus post-judgment interest at the rate of 1.22% per annum in accordance with 28 U.S.C. § 1961(a). There shall be no award of pre-judgment interest.

## V. CONCLUSION

For the foregoing reasons, the court GRANTS IN PART Malibu Media's motion for default judgment with respect to the fifteen Copyrighted Works and DENIES IN PART Malibu Media's motion for default with respect to the three copyright-pending works. The court GRANTS IN PART the request for damages.

It is ORDERED that judgment by default be entered in favor of plaintiff Malibu Media against defendant Jonathan Gonzalez as follows:

1. Statutory damages in the amount of $11,250

2. Post-judgment interest at the rate of 1.22% per annum from entry of judgment until the judgment is paid in full;

3. Attorneys' fees and costs in the amount of $1,182; and

4. All costs of court as provided by law.

The court also ENJOINS the defendant as follows:

1. Defendant Johathan Gonzalez is enjoined from directly, contributorily or indirectly infringing Plaintiff's rights under federal or state law in the Works, including, without limitation, by using the internet, BitTorrent or any other online media distribution system to reproduce (e.g., download) or distribute the Works, or to make the Works available for distribution to the public, except pursuant to a lawful license or with the express authority or Plaintiff; and

2.  Defendant Jonathan Gonzalez is ordered to destroy all copies of Plaintiff's works that the Defendant Jonathan Gonzales has downloaded onto any computer hard drive or server without Plaintiff's authorization, and shall destroy all copies of the Works transferred onto any physical medium or device in Defendant Jonathan Gonzales's possession, custody, or control.

Signed at Houston, Texas on July 13, 2017.

_____
Gray H. Miller
United States District Judge